The Covered Wagon, Inc., et al. [1] v. Commissioner. Covered Wagon, Inc. v. Commissioner
Docket Nos. 452-63, 4171-63 - 4177-63. .
United States Tax Court
T.C. Memo 1965-122; 1965 Tax Ct. Memo LEXIS 208; 24 T.C.M. (CCH) 641; T.C.M. (RIA) 65122; May 6, 1965
Gordon D. Simons, 3304 France Ave. S., Minneapolis, Minn., for the petitioners. S. Clay Freed, for the respondent. DAWSON
Supplemental Memorandum Opinion DAWSON, Judge: The parties have filed a joint motion requesting this Court to rule on the question as to whether The Covered Wagon, Inc. distributed all of its assets, less those retained to meet claims, within the 12-month period beginning on the date of adoption of its plan of complete liquidation. A decision on this issue, which was not included in our Memorandum Opinion [T.C. Memo. 1965-79] *209 filed on April 5, 1965, is necessary to determine whether The Covered Wagon, Inc., is entitled to the benefits of section 337(a), Internal Revenue Code of 1954. [2]
The fully stipulated facts relating to this issue are as follows: The Covered Wagon, Inc., adopted a plan of complete liquidation on January 2, 1957, which prescribed completion of the liquidation by December 31, 1957. The following resolution was adopted at a special meeting of the stockholders of The Covered Wagon, Inc., held on September 27, 1957: BE IT RESOLVED that the corporation be liquidated as of September 30, 1957 and that all property of the corporation, *210 not represented by cash, be transferred to Fritz W. Benson as trustee in liquidation, and that he proceed as soon as practicably possible to convert such assets into cash and to distribute such cash to the former stockholders in proportion to the number of shares owned and cancelled by said stockholders. The stock certificates issued to Fritz W. Benson and Alice Benson and to James P. Ryan and Grace Ryan were surrendered and marked "Cancelled" on September 30, 1957. In the furtherance of its business of operating a cafe and tavern, The Covered Wagon, Inc., made application for and received from the City of Minneapolis licenses permitting sale on its premises of liquor and beer. The Covered Wagon, Inc., was originally granted such licenses during the year 1935. At intervals prescribed by law, The Covered Wagon, Inc., made application for the renewal of such licenses. At all times here material, The Covered Wagon, Inc., was required by March 1 of any calendar year to make application for the renewal of such licenses. Licenses granted pursuant to such application entitled the applicant to sell liquor and beer on the approved premises from and after the following April 1 until the *211 next April 1. The final application filed by The Covered Wagon, Inc., with respect to such licenses occurred on March 1, 1957. By virtue of favorable consideration of this application, The Covered Wagon, Inc., was permitted to sell liquor and beer on its premises during the period April 1, 1957, to April 1, 1958. The licenses granted to The Covered Wagon, Inc., for the period April 1, 1957, to April 1, 1958, were transferred to Frank and Corona Rusciano, at 206-210 South Fourth Street, Minneapolis, Minnesota, on February 14, 1958. In order to effect transfer of liquor and beer licenses, the transferee must file an application with the Department of Licenses, Weights and Measures of the City of Minneapolis, Minnesota. The application by Frank and Corona Rusciano to effect transfer of liquor and beer licenses from The Covered Wagon, Inc., was executed on January 8, 1958. It is the custom of the licensing authorities of the City of Minneapolis not to approve the transfer of a liquor license if the answer to question number 22 on the liquor license application recites that consideration, money or property has been or agreed to be or will be paid or given or exchanged by any one for *212 the purchase or transfer of the license sought to be transferred. The answer to question 22 of the application filed by Frank and Corona Rusciano that "No consideration paid for transfer of licenses" was verified on behalf of The Covered Wagon, Inc., by Fritz W. Benson. A Bill of Sale was executed on January 8, 1958, in conjunction with the transfer of the beer and liquor licenses, which transferred to Frank and Corona Rusciano the following assets: 1
Tenderizer, Toledo
38
Glass racks, 16 X 16
1
Wood rack, 20 X 20
1
Ice crusher machine
17
Oval trays
7 1/2
doz. sugar bowls
3
Nylon silver cylinders
1
Stainless steel set up table
1
Food tabulator
1
Butter cutter
3
Glass washers
5
Silver bin, stainless (4 comp.)
2
Stock pots
6
Metal cylinders for baskets
1
Silver cylinder basket
2
Stringmaster Fr. fryer cutters
1
# 2 Edward can opener
1
12 X 204 pan
1
3-shelf gal. cart.
1
Bank of 3 lockers
6
doz. tan plates and saucers
17
only compartment plates
Certain original paintings used in The Covered Wagon decor. Cypress sign in front of The Covered Wagon at 114 South 4th Street (subject to the Federal court's ruling on the ownership *213 of the main brackets attached to the building), to be removed by purchasers. The Covered Wagon trade name (applies only to City of Minneapolis). Good will. List of credit card holders. List of clubs and organizations who used The Covered Wagon for their luncheon and dinner meetings. Liquor license and On and Off sale 3.2 beer license. The total consideration paid by Frank and Corona Rusciano for such assets was $15,000. The amount of expense attributable to the sale was $750. The Bill of Sale was signed on behalf of The Covered Wagon, Inc., by Fritz W. Benson, president. The assets listed on the Bill of Sale were owned by The Covered Wagon, Inc., prior to September 30, 1957. The books of The Covered Wagon, Inc., show that immediately prior to September 30, 1957, The Covered Wagon, Inc., held, inter alia, the following assets: Fair market value,
Asset
Book value
9-30-57
Bank account - general
$ 31,342.85
$ 31,342.85
Bank account - payroll account
557.16
557.16
Accounts receivable
588.19
505.45
10 M - U.S. Savings Bond Series F dated 11-1-45, due
11-1-57
7,400.00
9,860.00
170 M - U.S. Treasury bills, acquired 8-14-57, due
11-14-57
168,497.20
169,264.93
*214 The Covered Wagon, Inc., had its general bank account with the Midland National Bank of Minneapolis, Minnesota. The signature card for the general bank account contained the following names of persons authorized to sign checks drawn upon the account: Fritz W. Benson; Jas. P. Ryan; Mina Benson; F. M. Irving; and R. F. Sorenson. This signature card is dated January 5, 1948. On December 31, 1957, there was a balance of $17,627.60 in the general bank account. Numerous deposits were made to, and checks paid from, the general bank account during the years 1958 and 1959. Deposit tickets made out to deposit funds in the general bank account were completed in substantially the same manner throughout the period August 20, 1957, through June 17, 1958. On January 19, 1960, the general bank account was closed. The Covered Wagon, Inc., had its payroll account with the Midland National Bank of Minneapolis. The signature card for the payroll account contained the following names of persons authorized to sign checks drawn upon the account: Fritz W. Benson; Jas. P. Ryan; Mina Benson; F. M. Irving; and R. F. Sorenson. This signature card is dated January 5, 1948. On December 31, 1957, there was a *215 balance of $557.16 in the payroll account. In January 1958 the $557.16 balance in the payroll account was transferred to the general bank account and the payroll account closed. 10 M - U.S. Savings bond Series F dated 11-1-45, due 11-1-57, were redeemed and the proceeds deposited in The Covered Wagon, Inc.'s general bank account on November 19, 1957. 170 M - U.S. Treasury bills acquired 8-14-57, due 11-14-57, were redeemed and the proceeds deposited in The Covered Wagon, Inc.'s general bank account on November 14, 1957. The following checks were written on the general bank account of The Covered Wagon, Inc.: Check
No.
Date
Payee
Amount
A-1540
9-27-57
Fritz Benson
$35,000.00
A-1541
9-27-57
James P. Ryan
35,000.00
A-1542
9-27-57
Mina Benson
35,000.00
49809
11-18-57
James Ryan
65,000.00
49810
11-18-57
Mina Benson
65,000.00
49811
11-18-57
Fritz Benson
65,000.00
49814
12-31-57
James P. Ryan
5,000.00
49815
12-31-57
Mina Benson
5,000.00
49816
12-31-57
Fritz Benson
5,000.00
1958
1,682.58
1958
557.16
The Covered Wagon, Inc., possessed a right to a refund of cabaret taxes prior to September 30, 1957. On June 17, 1958, the *216 following deposit was made in the general bank account: "U.S. Treas. $2,491.35." This was the amount of the refund of cabaret taxes plus interest due the corporation. Cash in the amount of $960.02 was the only asset retained by The Covered Wagon, Inc., to meet claims for state income tax ( $15) and personal property tax ($945.02). The Covered Wagon, Inc., was granted a perpetual existence and it had not dissolved its corporate existence as of May 13, 1964. We think it is clear from these stipulated facts that The Covered Wagon, Inc., is not entitled to the benefits of section 337(a) for the following reasons: 1. All the assets of the corporation, other than the $960.02 retained to meet claims of creditors, were not distributed to the shareholders within 12 months after January 2, 1957, the date of the adoption of the plan of complete liquidation. Sec. 1.337-2(b), Income Tax Regs.; cf. Mountain Water Co. of La Crescenta, 35 T.C. 418, 428-429 (1960). 2. The corporation has failed to show a complete liquidation of all its assets within the requisite 12-month period. In fact, the sale of some corporate assets to Frank and Corona Rusciano *217 did not occur until January 8, 1958, several days after the 12-month period expired. In addition, a substantial portion of The Covered Wagon assets was converted to cash and the cash deposited in its general bank account which was not closed until January 19, 1960. 3. We disagree with petitioner's contention that all corporate assets were distributed to the stockholders on September 30, 1957, when they adopted a resolution to liquidate the corporation on that date and to transfer "all property of the corporation, not represented by cash" to Fritz W. Benson as trustee in liquidation. There is no specific document or any other competent evidence among the stipulated facts or exhibits which establishes that such property was ever transferred to Fritz W. Benson as trustee in liquidation. Moreover, the appointment of Fritz W. Benson as trustee in liquidation never became operative under the provisions of section 301.47, subdivision 2, Minnesota Statutes Annotated, since the certificate instituting voluntary dissolution was not filed with the Minnesota Secretary of State. This act was necessary to vest the trustee by operation of law with the title to all assets of The Covered Wagon, Inc. *218 Cf. Rev. Rul. 63-245, 1963-2 C.B. 144, requiring a transfer of property to a trustee in liquidation and compliance with applicable dissolution laws. And what was done after September 30, 1957, tends to show that Benson was in fact acting for the corporation in his capacity as president rather than for the shareholders as trustee in liquidation. Accordingly, we hold for the respondent on this issue. As previously indicated, Decisions will be entered under Rule 50. Footnotes
1. The proceedings of the following petitioners are consolidated herewith: Fritz W. and Alice Benson, Docket No. 4171-63; Estate of Hugo W. Benson, Deceased, Urban L. Plain, Administrator, and Mina Benson, Docket No. 4172-63; Estate of James P. Ryan, Deceased, Grace D. Ryan, Administratrix, and Grace D. Ryan, Docket No. 4173-63; Grace D. Ryan, Transferee, Docket No. 4174-63; The Covered Wagon, Inc., Docket No. 4175-63; Mina Benson, Transferee, Docket No. 4176-63; and Fritz W. Benson, Transferee, Docket No. 4177-63.↩
2. SEC. 337. GAIN OR LOSS ON SALES OR EXCHANGES IN CONNECTION WITH CERTAIN LIQUIDATIONS. (a) General Rule. - If - (1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and (2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims, then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.↩